Mr. Rohi, Mr. Kasab. Yes, Your Honor, may I please report my name is Lance Kasab and I represent the appellant Dr. Rohi in this case. This is a lawsuit brought by Dr. Rohi against his plaintiff's lawyers who breached their fiduciary duty in order to obtain a windfall of 70 percent of the award given to Dr. Rohi. And Your Honor, in 1850 the United States Supreme Court in Stockton v Ford stated, quote, there are few business relations of life involving a higher trust and confidence than those of attorney and client, or generally speaking, one more honorably and faithfully discharged, few more anxiously guarded by the law or governed by certain principles of morality and justice. That is the duty of the court to administer them in a corresponding spirit and to be watchful and industrious to see that the confidence thus reposed shall not be used to the detriment of prejudice to the rights of the party bestowing it. And I tell the court this because I asked the court to carefully consider these principles as a foundation of its opinion in this case, because, of course, the attorney client relationship is a solemn relationship and its relationship of trust. Now, Brewer defendants, the appellees here represented Dr. Brewer throughout the Ketam case and the resulting bankruptcy case. Dr. Rohi trusted his lawyers look out for his interest, and the lawyers repaid that trust by looking out for their own interest and apparently concealing a inherent conflict of interest that they have now stated is the reason why they were reversed during the November 2017 hearing without any disclosures whatsoever to Dr. Rohi. Why not bring this up at the bankruptcy hearing? Okay, because Dr. Rohi had no idea that there was any adversity at the time because did he see the order? I'm sorry? Did he see the order? I'm certain that he saw the order after the fact. Of course, the case, these claims did not arise until the time that the check was given to Brewer and Frichard for them to disperse to Dr. Rohi because all the funds went to the appellees. And when Dr. Rohi got a check showing 30 percent of the recovery as opposed to 60 percent as the attorney-client contingency fee showed, that's why... Mr. Kasab, let me ask you about that. There's an attorney, Long, whose thought was representing Dr. Rohi at this hearing separate from Brewer. Who is Long and what was his role at the hearing? Mr. Long was brought in by the Brewer defendants, and I'm not exactly sure what his purpose was other than to argue at the hearing. It is clear under the record, it's in our briefing, that Mr. Brewer represented Mr. Rohi and another lawyer, Mr. Finn from Brewer's office, also represented Mr. Rohi during that hearing. There were no pleadings filed on behalf of the lawyers for their claims, if any. This was pleadings filed on behalf of Dr. Rohi by Brewer and Frichard in order for Mr. Rohi to obtain his attorney's fees by the statute. The transcript of the hearing, I certainly can be corrected, but I think the first page of it shows this fellow Long representing Dr. Rohi, but I'll certainly can stand corrected. Secondly, the briefing of the law firm says that Dr. Rohi was there at the hearing. Is that correct? Was physically present? I believe that's correct. And looking at the transcript of the hearing, it seems to me that the whole issue was, does the percentage for the lawyers come off the top, come off the 4 million? Does it come off the 70-30 split between the state of Texas and Relator? Just how does the attorneys work themselves in? And Judge Isker, I guess it was Isker at this stage, made his computations and a million six is 40% of 4 million. They get their money off the top and then the 70-30 is the rest of the money between the state and Dr. Rohi. It seems to me that's what the whole hearing was about. And now it does seem to me, if you're saying that the Brewer law firm somehow was not representing his interests then, that there was a breach of judiciary responsibility and not making different kinds of arguments, that still doesn't tell us where that is, what venue or what court is the right court to hear that. But it does seem to me that to say that it wasn't fully in front of Judge Isker and everyone of what does Rohi get, what does his lawyers get, and what does the state get, did that, to say that wasn't the purpose of the hearing, you'll have to do some convincing. Uh, I understand your honor. First of all, let me address the one thing regarding representation. It's in our briefing, uh, the record of the court states that the hearing was attached, attended by the attorneys for the state of Texas by Rohi, who is represented by attorneys from also a part of our briefing. We show, um, that it shows for Dr. Rohi, it shows, uh, Charles E. Long, and it shows Larry Finn, Mark Brewer from Brewer and Pritchard. And Mr. Long is an officer of the court, stated in front of the court, Charles, you know, who was here for Mr. Rohi, and Charles Long said, Charles Long, Larry Finn, and Mark Brewer appearing on behalf of Dr. Rohi. So if I am a client at a hearing and my client is there appearing, I mean, the lawyers are there appearing for me, how do I know that I am, that they're adverse to me? Number one. Number two, if they are in fact adverse to me, there are duties of disclosure. The lawyer should have disclosed the adverse, adverse, uh, content that was going to be at this hearing. They should have advised me to get, seek outside counsel. They should have withdrawn from the representation. Instead, they're going in there telling me, the client, that, uh, it's a good thing if the court awards you a large amount of attorney's fees, because that will go into the gross recovery. And the gross recovery is then going to be split through our contingency fee interest, which is 60-40. So why would that raise in anybody's mind, a suspicion, a client suspicion, when there's an attorney-client relationship, a relationship of trust, to think anything other than that? So why would he care how much the court appoints Dr. Rogge as attorney's fees? It could be 1%. It could be 100%. If I'm the client, I want 100%, because I know I'm going to get more out of the recovery. So I think the fact that they're not adverse doesn't get res judicata. And the fact that they're, uh, you can't, I don't see how you can have privity and res judicata at the same time anyway. So remember, the statute allows the attorney's fees to be awarded to Dr. Rogge, not to Brewer and Pritchard. So there's a difference there. If this was a fee application where the lawyers had filed a fee application and they had done it on their own behalf, as opposed to Dr. Rogge, might have a different story here. And that gets me, since we're on res judicata, that's my biggest problem with this. There's no way that the lawyers can show privity and adversity at the same time. Number one, that's an impossibility. If there was adversity, all the disclosures should have been made. None of them were made. The other issue is that there is not the same claims issue in the underlying case. And if there were, again, the Mr. Rogge or Dr. Rogge should have been informed because of that, with regard to that, had his own lawyer present so he could bring up any claims. And the other thing is he didn't know there was a claim. He didn't know there was a claim until he got a check from Brewer and Pritchard showing 30% as opposed to 60% as the contract showed, as what he was promised by the lawyers. So there should be no suspicion aroused until that happens. So it's all extrinsic. All these are state law claims that are extrinsic to the November 2017 order. I want to touch on the jurisdictional issues very quickly as well. Let me ask you this before we leave this hearing. There's first an effort to settle a few months earlier. There was an exchange of emails back in September. Then you have the hearing in November, if I have my dates right. Was the issue, is it in the record what the issue was that hung people up? Was it an issue of where the attorney's fees fit in, for example, in relationship to what the state and relator get? Because you have the statutory limitations of 30% is the most that the relator can get. But if the state gets 70% of the entire $4 million, they're not paying any attorney's fees. They're getting it all for free. So how the attorneys get paid by the state, is there anything in the record about what was the holdup and was part of it whether the state gets its money off the top or whether it had to share in the attorney fee burden? I think that was an issue at the hearing in November 2017 regarding whether or not the state should pay its fair share of the attorney's fees. Again, however, when the client is being told that there is an attorney-client contract that outlines what's going to happen with the gross recovery and how that is going to be split amongst the lawyers and the client. And in addition to that is told the higher the allocation of your attorney's fees awarded by the bankruptcy court, the more money you're going to be putting in your hearing. I'd be hoping my lawyers out there saying, get every penny you can. Where the suspicion comes in is after the fact, after the order. And when the check comes in and he sees that there's a disparity between 60% and 30%. And then he inquires about what's going on. And the lawyers say, well, guess what? We get the entire award by the court and we get 40% of your award. Therefore we get a windfall of 70%. The fact of the matter that they get 70% of Dr. Roby's award is unethical and unconscionable on its face. Counsel, let's talk about which court is the right court to be resolving that since that is the jurisdictional point. We deflected you from that. Why don't you move to that? Yes, your honor. Of course, we believe that there is no arising under arising in or related to jurisdiction. Rising under jurisdiction applies to claims made under title 11. A proceeding does not arise under title 11 unless it invokes a substantive right created by federal law, bankruptcy law, which does not exist outside bankruptcy. The state law claims here, the breach of contract, breach of judiciary duty and violations of the Deceptive Trade Practices Act are all solely under state law and the rise only under the jurisdiction of state law. There's no bankruptcy rules or regulations that cover those claims. Thus the case does not arise under title 11 because the right to sue comes from state law and therefore there's no rising under jurisdiction. There's no arising in jurisdiction as well because matters arising in bankruptcy refer to those administrative matters that arise only in bankruptcy cases and are not based on any right expressly created by title 11, but nevertheless would have no existence outside of bankruptcy. Of course, all of these claims do exist outside of bankruptcy and the fundamental question is whether the proceeding by its nature, not particular factual circumstances, could arise only in the context of bankruptcy. Therefore, it's immaterial that Rohe's claims against Brewer grew out of the debtor's bankruptcy and the resulting settlement. Rohe's claims for breach of judiciary duty and violations of the Deceptive Trade Practices Act and breach of contract are not a type that can only exist in the bankruptcy and therefore arising in jurisdiction doesn't apply. The related to jurisdiction doesn't apply as as well. It only occurs when, one, the outcome of the action could alter the debtor's rights, liabilities, options, or freedom of action, and two, the outcome impacts the handling and administration of the estate. Now there is no way that these claims against Brewer and Pritchard would have anything to do with the outcome of the action. The order does not state that it would impact the plan in any way. These are all state law claims that all arise outside of the plan and the outcome of these claims do not impact the administration of the bankruptcy at all. The bankruptcy is over, plan was confirmed, and everything is going its way. So it has nothing to do with these claims. Therefore, there's no related to jurisdiction. Again, I get how Brewer and Pritchard and the courts, lower courts, are hanging their hat on the fact that the court has a right to review and analyze its previous orders and therefore the jurisdiction arises under under that. However, again, that order is completely immaterial to the claims in this case. It doesn't matter if the order said Dr. Rohe should get one percent of the attorney's fees, be awarded one percent attorney's fees, or 100 percent. The allocation doesn't matter. What matters is how that allocation goes into the gross recovery and is paid out to Dr. Rohe for his share as opposed to the lawyer's share. So reviewing the order makes no difference. Again, the claims are outside of that order, and they occurred after the order occurred. It was several months afterwards, so the claims didn't even arise until after the order was entered. And I see that I'm about up on my time, so if the court has any other questions, I'll be happy to answer those. Thank you, Mr. Barron. Yes, your honors. May it please the court. For the appellees, I represent Brewer and Pritchard, Mark Brewer and Blair Hickman. I wanted to start by addressing a few of the points made by Mr. Cassid and answer a question about Mr. Long. If your honors would look at the record, page 700, that is a portion of the transcript of the September 20, 2018 hearing on the motion to dismiss. One of the first questions that the court asked, Judge Isger asked, because he was, your honor, was wanting to remember whether Mr. Rohe had separate counsel in addition to the Key Tam counsel at the bankruptcy hearing in November. And the question was at the hearing before me where I allocated the money, who was his, Rohe, and the answer was, your honor, it was Mr. Long and his firm that represented Dr. Rohe. Now Mr. Brewer and his firm were also there because they had an interest. They had an assignment of part of the gross recovery as their attorney's fees. But Charles Long, a board certified bankruptcy lawyer, was there. And that's why you see that answer on page 700 of the record. Mr. Barron, let me ask you, is there any explanation of that? Obviously, Dr. Rohe now is saying there's a conflict of shared duty, whatever else. Was he there because of a perceived conflict of a need for separate counsel or was he truly separate? I think what he was there for, it's not in the record, but he was there for his bankruptcy expertise because once the judgment was entered by the state court and the Key Tam litigation, and by the way, it was about, I think, 5,000, over 5,000 incidents of Medicaid fraud and a $49 or $50 million judgment, the defendant filed bankruptcy. And so they got bankruptcy counsel, Mr. Long, involved in the case. And so that's where he comes from, and that's why he was mentioned. And that is also why Judge Isger, in his order, um, three or four times said specifically that the attorney's fees were separately awarded to Dr. Rohe's attorneys to be allocated among them in accordance with their own agreements, is essentially what he says. In every place he refers to the allocation he makes of this $4 million settlement that occurred after the bankruptcy happened. He refers to a separate award to Dr. Rohe. It was $720,000, a separate award to the state of $1,599,000 and a separate award to the attorneys. And Your Honor was correct. Um, that was the exact reason there was a hearing. The state of Texas had claimed at one point that the attorney shouldn't be compensated at all. Well, Judge Isger wasn't going to do that. He said that at the outset of the November 7, 2017 hearing that he wasn't going to deny them their recovery of attorney's fees, and he didn't. He made his own calculations, told the parties, here's what I think it ought to be. You have the right, though, to an evidentiary hearing. I'll be glad to give you one, but here's my thoughts. And if y'all want to go out and consult with your clients, and Dr. Rohe and his wife were there, excuse me, do so. And then if we don't have an agreement, then we'll take it up. Well, after the 10-minute break, after consulting with Dr. Rohe, with Mr. Long and Brewer, they announced on the record as the November 17, November 7, 2017 hearing transcript reflects, we don't object to the court's allocation. The state said the same thing, and that was it. They agreed not to. Mr. Garrett, let me ask you about something in your brief, I think is where I saw it. I got the impression, and maybe it's an explicit statement, that Judge Isker had the representation agreement. He was shown it. So he needed, he had that evidence and whatever else was in front of him, including the statute. So he was making sort of a global decision of what, under the representation agreement, the obligations were, what under the statute on Key Tam and Texas, what the obligations were between the state-related attorneys. And of course, your point, I mean, what we're really looking at is, is this the right court to have made the decision? It does seem to me, without saying that it answers whether in the right, bankruptcy was the right court, that it's not an interpretation of his order. His order is as clear as it could be of the division of the money. We don't need to interpret it. We need to decide whether it is somehow flawed, either because of a breach of fiduciary duty or some other claim. But it does seem to me that he had in front of it exactly what your friend, who also appears on the screen here, Mr. Kasab, is arguing to us, that there's a different way to allocate between the lawyers and Dr. Rohe, that this decision didn't take into account. But Judge Iskra had all of that in front of him, and apparently at least some of the arguments in front of him that we're hearing now, at least as to what the state gets versus what the attorneys get. Is that a fair assessment? Yeah, absolutely, your honor. In the time, in the many months between the time of the settlement, the four million dollar settlement, and the removal to the bankruptcy court, the parties, the state, and Dr. Rohe, and his counsel, exchanged many, many briefs, and they're all in the record, and arguments about why and how much the attorney's fee should be. Then the court, Judge Iskra was considering this issue. If you look at page, starting at page 481 of the record, he asked for and was presented with the Brewer and Pritchard fee agreement, and he considered it. Not only did he consider it when he was told that the agreement had a lower percentage if the case didn't go to trial, versus if it did, there was a 45% contingency after the case was called to trial, and 40% before the first trial. The court, him did hot a little bit about whether this was a quote trial that would get him to 45, get the firm to 45%, but he decided and everyone agreed that 40% was more applicable, and so that's what he did. 40% of four million dollar settlement is a million six hundred thousand, and he added to that 81,000 in attorney's fees, and that is exactly what the amount he was entitled to. 30% of the four million dollar settlement. Those were the gross proceeds, and out of that 1,200,000 that he was entitled to, 480,000, 40% of that was allocated in the judge's mind to his attorneys, and so by the way, of the 1,600,000 attorney's fees, Dr. Rohe only paid 480,000 out of his part. The vast majority, 70 or 75%, were paid by the state out of the state's funds. Let me ask you about a piece of evidence that the other side cites in this briefing. It's an email from September of 17, I'm trying to see who the sender is, Mark Brewer, but it's to Dr. Rohe et al., forwarding some things, but it goes back to Baker Bott's email that's being forwarded, and in there it says, the state and Dr. Rohe agree that Judge Isker will determine the amount of the four million dollar settlement. Proceeds payable to Dr. Rohe and amount payable to the state. The state will request Judge Isker not issue a written opinion and Dr. Rohe will not object to that. My understanding of the use of this in your opponent's brief is it's saying that the allocation that they were talking about is just between the state and Dr. Rohe, and then it's for Dr. Rohe to sort out with his lawyers, the Brewer firm, not Charles Long, or whatever Long's first name is, how to allocate. Is that email, I may not have described it well enough, familiar to you? And two things from there, one of which probably isn't really relevant to us, why does the state not want a written opinion? I guess they're conceding some things they don't want in writing. But what about this, that Judge Isker will just determine the allocation between the state and Dr. Rohe, is what that email there. I mean, there's a lot of evidence, but that's what that email seems to say. Yes, your honor, I am familiar with it, and that was during this time period where the state and Dr. Rohe and Brewer and Pritchard were back and forth with the issue of attorney's fees, where the state was saying, hey, you're not entitled to any attorney's fees, and the law firm was saying that that's not right, and we'll have to let the judge decide that. But in no email, and not in that one or any others, does the law firm say, and by the way, he's going to do the $4 million allocation, and as a part of the gross proceeds that we have defined in our contingent fee agreement, it will include the attorney's fees that might be awarded to, and at the time nobody knew what the judge was going to do, be awarded to the firm. And that's exactly what they're trying to undo, is this idea that the firm is getting an unconscionable 70% fee is ludicrous. The only way he can get there is by lowering the gross receipts or the gross recovery. And what he's, my opponent, is trying to say is that the gross recovery was not $4 million. It was $2.4 million because he wants to take out what the state was given. Well, that wasn't the gross proceeds. Gross proceeds under the fee agreement are defined as the sum of any and all sums of money, notes or other property, received from any party for the reduction or elimination, etc. It's the typical anything you get in settlement or otherwise. And the judge had that agreement before him. He reduced the amount by 40%. He could have given the attorneys nothing, I suppose, and then we would have been the appellant. But he didn't. He said at the very beginning, as I started out, that I am not going to give the attorneys nothing. They obtained this $49 million judgment. They've worked for a year and a half with the state trying to get an allocation of this settlement, and I'm not going to do that to him. So he made a decision. Dr. Rohe was there. So in your theory, what should Dr. Rohe have done? Let's say he's upset at that moment, he sees the order. What should he have done? Well, he heard what the judge said three or four times. He should have during this 10-minute break that the judge said, y'all consider it. He should have told his lawyer, Charles Long and Brewer, I'm not agreeing to this. I'm only getting $720,000 and you're getting $1.6 million. Is he represented at this hearing by Long and Brewer? He's represented at this hearing by Long and Brewer, yes. So isn't that kind of awkward? I mean, how does he tell his lawyers? I'm just not sure how that works. Well, I think it's like any other situation where a court makes a decision on granting attorney's fees in a bankruptcy or any other case. But normally, clients speak through their attorneys, right? They don't speak by themselves. That's true. You're not saying Dr. Rohe should just stand up and say, I'm pro se now? No, not at all. How is this supposed to work? He would have wanted to, if he didn't like what the agreement was, what the allocation was that the court was announcing he was making, he should have told his lawyer, I'm not agreeing to it. The client is the one in control of the case. He can say, no, I don't want to agree to it. Your theory is he should tell his lawyers what to say in court. And then the lawyers are supposed to dutifully report what the client said, even though the lawyers themselves disagree and obviously want more money. No, all he had to do was object to what the court was proposing. And the lawyers would have said, look, you can take your chances with an evidentiary hearing, and we'll be glad to go forward with that. I assume there's no transcript of it. That's what I assume happened during this break. Dr. Rohe, you can go forward and agree with what the judge has indicated, or we can go forward with a trial and evidentiary hearing and see, you could get more, you could get less. Also, let me ask you again about whether we're in the right court or not. It seems to me what Mr. Kasab is really arguing, and we've been talking about what all is in front of Judge Isker, is that even with all that in front of Judge Isker, there is an obligation owed by, now Charles Long was with a different law firm, so I'm not sure how all that works with the kind of conflict we're talking about now, but maybe there's too much of a relationship between Long and the Brewer people. But it does show up as a different law firm, that what he's really challenging is the integrity, the fiduciary responsibility not being upheld of his lawyers. And that's not really a bankruptcy issue. That is a question that could just as easily be resolved in state court, which is where such things are often brought. So he's challenging the actions of his lawyer, not the actions of the bankruptcy judge. You have cited, you don't have very good authority, you cite the best you have, that interpreting the order of a court proceeding is a court proceeding, and you have some other things you've given to us. But what about just that argument? This is really not about an interpretation of the order, it's as clear as it can be. It's whether there's a violation of the obligations by his attorneys that makes that order improperly entered. Well, your honor, it's the opposite side of the same coin. The only way he could get there under that theory and argue that there was some other agreement that he should be entitled to is to argue that his attorneys weren't entitled to the $1,000,681. Instead, they were only entitled to $960,000, which gets you back to a challenge to the November 7, 2017 order. He can only, it has to be a challenge of that order because the bankruptcy court specifically awarded that amount to the attorneys. And so if he wants to turn around and sue in state court, which he did, never mentioning the bankruptcy court had already awarded the attorneys, but of course that got removed, he's still attacking the, no matter how he spends it, the amount of attorney's fees that were awarded separately to the attorneys. And so as Judge Isger held and as Judge Lake affirmed, it's essentially an attack on the bankruptcy court's order because the order allocates the settlement funds and they acknowledge two things. One, they acknowledge that the underlying key tamp proceeding is a core proceeding. And number two, they acknowledge that the court had the authority to allocate the funds. And so that jurisdictional point is admitted. So the bankruptcy court was clearly the court that they had to go into because it was an attack on that court's order, which again, separately awarded the attorney's as a part of the, Dr. Rohe's recovery. That's clear. He said- Could you theorize this not as an attack on the order, the order, the other side could say the order's fine. I don't care about what the order says. The question now is, can I sue you for malpractice, fiduciary duty, what have you? And the order stands under that theory. Well, there's no, of course, first of all, there's no malpractice allegations at all. They did a superb job. My point is, why does it necessarily constitute an attack on the order? Why can't they just theorize that the order stands, but we would like your pot of money because we're entitled to it under our agreement. And that is because the order doesn't do that. The order awards attorney's fees to the attorneys. And if they're successful in attacking that, and they're going to have to take some of that attorney's fees money and give it to Dr. Rohe, which isn't what the bankruptcy court did. And I see my time has expired. And for all of the reasons that we cited in our brief, I would ask for your support to advance. Thank you, sir. Mr. Kasab. Yes, your honor. Thank you. Well, first of all, malpractice is an umbrella term for all the different lawsuits and causes of action you can bring against a lawyer. So therefore, a breach of fiduciary duty claim is in essence, a malpractice action. In any event, a couple of things, counsel, I heard admit that that Mr. Long was not there at the hearing for any conflict of interest on behalf of Dr. Rohe. He admitted that in open court just a while ago. And again, if there is adversity at this hearing, Dr. Rohe should have been informed, should have told to have his own counsel, not picked by Brewer and Pritchard, even if Mr. Long was in fact there for that purpose and Brewer and Pritchard should have withdrawn. They should have not have made an appearance for Dr. Rohe at this hearing and spoke for him. The other fallacy that I heard counsel say is over and over again is that the court order ordered attorney's fees or awarded attorney's fees to Brewer and Pritchard. That is incorrect. The order awarded attorney's fees to Dr. Rohe because Dr. Rohe he was asking for the concept that Dr. Rohe is only entitled to 30 percent and therefore it couldn't be that he would get these this other award is inaccurate because the statute says on its face that Dr. Rohe is entitled to a maximum of 30 plus an award of attorney's fees. If in fact the lawyers wanted to change their contingency fee agreement, there are rules for that. They have to make full disclosure. They have to advise counsel or their client to get outside counsel. There's a whole slew of things that they have to do in order to do that. They just figured we just bypass that, go into court, make an argument on behalf of our client, and then come back and breach our fiduciary duty afterwards and then come back and say, well, even if we breach our fiduciary duty at the November 27th hearing, too bad, so sad. It's res judicata and you don't have any claims. If this court allows that, it's going to open up the door for all kinds of attorneys to take that advantage of their clients. If in fact the lawyers wanted to have whatever the the court was going to award them, it should have been disclosed in the attorney-client contract. I have seen contracts where lawyers put I will get the higher of whatever the court awards in this case or 40 percent. That's okay as long as it's disclosed. There's nowhere that language is nowhere to be found in this attorney-client contract. The only thing that is in this attorney-client contract is the fact that all recovery and awards will be split 40-60 if there's no trial, 45 percent if there is a trial. This issue about 40 percent and 45 percent at the underlying bankruptcy court was an issue, but it was an issue as to whether or not they should get the 45 percent because we're within 30 days of trial because the contract states it goes to 40 percent if you're within 30 days of the first trial session. So that was an issue, not a matter of whether or not they should get 40 percent out of the recovery or 45 percent out of the recovery. It was whether or not what percentage should apply based upon whether or not they were within 30 days of a trial. The interesting concept here of when they took this break and whether or not Dr. Rohe should have spoke up during this break saying, hey, I object to this. I don't agree with this is absurd in the fact that at this break he was assured that he was going to get 40 percent pursuant to the contract. They were going to that the lawyers were going to get 40 percent of the total award and Rohe would get 60 percent of the total award and therefore he would have no reason to object. Why would he object to that? He would want an award to be as high as possible knowing that he's going to get 60 percent. And remember, this is a 12B6 hearing as opposed to a summary judgment hearing where there's evidence. There's no evidence of what occurred during this break. Council wants to surmise that this occurred and that occurred. None of that occurred. We don't know what occurred because we don't have that evidence in front of us. Well, Mr. Gasol, I thought you just said what occurred that he was told that he's going to get 60 percent. Do we have that as evidence that he was told that during the break that you're going to get 60 percent of whatever you just said? Yeah, Judge, it's remember when we filed this case, it was filed in state court. It's a notice pleading. We know it was a bare bones petition. That's why it was important when we asked for leave. When these issues arose, we asked for leave to amend to put all of these things in the amended petition. And these things are all in the amended petition. So another reason why we believe the court erred in failing to allow us to amend the petition to put all of this stuff in. You are correct. You're saying that's what you want to prove in court at trial? Correct. We would be able to prove all that stuff. There's we have writings of this effect, actually, that is not before the court right now. Again, we don't believe the court had jurisdiction. We don't think you've got how to apply. The lawyers breach their fiduciary duty and they should account for it. Thank you. Thank you, Mr. It's a case will be submitted and this court will.